IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT E. HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05cv3113 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| FRANK HOPKINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing no. 36, the Motion for Temporary Restraining Order ("TRO") filed by the plaintiff, Robert E. Hunt, a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"). In his complaint, the plaintiff asserts federal civil rights claims pursuant to 42 U.S.C. §1983 against employees of DCS, alleging that conditions of his confinement violate the Eighth Amendment to the United States Constitution.[1]

In his motion for a TRO (filing no. 36), the plaintiff states that he fears retaliation for filing the above-referenced case, and, based on comments by certain DCS staff, he fears future denial of access to the courts in connection with this litigation. The plaintiff presents evidence of retaliatory conduct by DCS employees with respect to other prisoner litigants.

In the Eighth Circuit, a court must balance four factors (the "Dataphase factors") when determining whether to issue a TRO or preliminary injunction. The Dataphase

---

[1]Also before the court are filing nos. 5 and 22. In filing no. 5, the plaintiff requests a TRO and preliminary injunction on his claims asserted in the complaint relating to single celling and low cholesterol meals. The plaintiff has not demonstrated any threat of irreparable harm or other factors warranting immediate scrutiny of those claims. In filing no. 22, the plaintiff voluntarily dismisses defendant-Barry Loock from this litigation. Filing no. 5 is denied, and filing no. 22 is granted.

1

factors are:

1. the threat of irreparable harm to the movant;

2. the balance between the harm to the movant and any injury that temporary injunctive relief would inflict on the nonmoving party should the injunction issue;

3. the likelihood of success on the merits; and

4. the public interest.

See, e.g., Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999); Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981) (*en banc*). The burden of proving that preliminary injunctive relief should be granted "rests entirely with the movant." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995).

While the plaintiff has demonstrated some retaliatory conduct toward other inmates, a pro se litigant may not represent the rights of others. Cavanaugh ex rel. Cavanaugh v. Cardinal Local School Dist., 409 F.3d 753, 755 (6th Cir. 2005); Fymbo v. State Farm Fire and Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000); Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998). The plaintiff does not suggest that he, personally, has suffered any harm, and he does not allege facts amounting to more than mere speculation that any defendant will engage in illegal acts to impede the plaintiff's access to the courts or that any defendant will violate the rules of court. Thus, at this point, the threat of irreparable harm to the plaintiff does not appear substantial.

In evaluating the factor of "likelihood of success on the merits," I consider whether the plaintiff has shown a likelihood that he will prevail on his accusations concerning denial of access to the courts. In Christopher v. Harbury, 536 U.S. 403 (2002), the United States Supreme Court explained that generally two types of claims exist regarding denial of

access to the courts, i.e., claims based on an obstacle which presently or prospectively impedes access to the courts or claims based on a past denial of access which thwarted the plaintiff's ability to litigate a previous matter.

> This Court's prior cases on denial of access to courts have not extended over the entire range of claims that have been brought under that general rubric elsewhere, but if we consider examples in the Courts of Appeals as well as our own, two categories emerge. In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time. Thus, in the prison-litigation cases, the relief sought may be a law library for a prisoner's use in preparing a case, Bounds v. Smith, 430 U.S. 817, 828 ... (1977); Lewis v. Casey, 518 U.S. 343, 346-348 ... (1996), or a reader for an illiterate prisoner, id., at 347-348 ..., or simply a lawyer, *ibid*.  In denial-of-access cases challenging filing fees that poor plaintiffs cannot afford to pay, the object is an order requiring waiver of a fee to open the courthouse door for desired litigation, such as direct appeals or federal habeas petitions in criminal cases, or civil suits asserting family-law rights, e.g., Boddie v. Connecticut, 401 U.S. 371, 372 ... (1971) (divorce filing fee); M.L.B. v. S.L.J., 519 U.S. 102, 106-107 ... (1996) (record fee in parental-rights termination action). In cases of this sort, the essence of the access claim is that official action is **presently denying an opportunity to litigate** for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.
>
> The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. The official acts claimed to have denied access may allegedly have **caused the loss or inadequate settlement of a meritorious case**, e.g., Foster v. Lake Jackson, 28 F.3d 425, 429 (C.A.5  1994); Bell v. Milwaukee, 746 F.2d 1205, 1261 (C.A.7 1984) ("[T]he cover-up and resistance of the investigating police officers rendered hollow [the plaintiff's] right to seek redress"), the loss of an opportunity to sue, e.g., Swekel v. River Rouge, 119 F.3d 1259, 1261 (C.A.6 1997) (police coverup extended throughout "time to file suit ... under ... statute of limitations"), or the loss of an opportunity to seek some particular order of relief, as Harbury alleges here. These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other

3

suit in the future.

>While the circumstances thus vary, the ultimate justification for recognizing each kind of claim is the same.  Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong.  However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.  We indicated as much in our most recent case on denial of access, Lewis v. Casey, *supra*, where we noted that even in forward-looking prisoner class actions to remove roadblocks to future litigation, the named plaintiff must identify a "nonfrivolous," "arguable" underlying claim, id., at 353, and n. 3 ..., and we have been given no reason to treat backward-looking access claims any differently in this respect. It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.

Id. at 412-15 (emphasis added).

Thus, to warrant a TRO to prevent a violation of the plaintiff's right of access to the courts, the plaintiff had to demonstrate the present denial of an opportunity to litigate or the past loss or inadequate settlement of a meritorious claim, so as to satisfy the Dataphase factor of "likelihood of success on the merits."  The plaintiff has not alleged facts sufficiently indicating either a present or past impediment of access to the courts. Thus, the plaintiff's motion is too speculative to establish the necessary injury and the factors defined in Dataphase.  See, e.g., Goff v. Harper, 60 F.3d 518, 521 (8th Cir. 1995): "[F]or an injunction to issue 'a right must be violated' **and ... 'the court must determine' whether 'a cognizable danger of future violation exists and that danger must be more than a mere possibility**.'" (Citation omitted; emphasis added.)  Filing no. 36, the plaintiff's motion

4

for a TRO to prevent the defendants from infringing the plaintiff's right of access to the courts, is denied at this time, without prejudice.

THEREFORE, IT IS ORDERED:

1. That filing no. 5, the plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, is denied;

2. That filing no. 22, the plaintiff's Motion to Dismiss defendant-Barry Loock from this litigation, is granted; and

3. That filing no. 36, the plaintiff's Motion for Temporary Restraining Order, is denied.

DATED this 24th day of October, 2005.

BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge