IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT E. HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05cv3113 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| FRANK HOPKINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on (1) filing no. 45, the plaintiff's Motion for Reconsideration; (2) filing no. 46, the defendants' Motion for Summary Judgment; (3) filing no. 58, the plaintiff's Motion for Order for Return of Property Taken by the Defendants; and (4) filing no. 64, the plaintiff's Motion to Submit New Evidence and Exhibits. The plaintiff, Robert E. Hunt, is a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"), serving a life sentence.

In a previous case in this court, Hunt v. Clarke, Case No. 4:02cv3105, the plaintiff vehemently protested his transfer from the Nebraska State Penitentiary ("NSP"), where he had been housed from 1984 to 2002, to the Tecumseh State Correctional Institution ("TSCI"). As a result of the transfer, the plaintiff lost his job at NSP. He earned less at TSCI, and the expense of telephone contact with his family increased. TSCI is a maximum security facility, and the plaintiff, of slight stature, felt endangered by some of the other inmates. The plaintiff also experienced difficulty practicing his religion because of intimidation by cellmates.[1] Moreover, at TSCI, the plaintiff was unable to obtain television

---

[1] When the plaintiff first moved to TSCI, he was placed in a double cell with an inmate who expressed animosity to Christians. In response to the plaintiff's requests, TSCI reassigned the plaintiff to another cell. However, the plaintiff's new cellmate lacked television headphones, so the plaintiff was subjected to secular television programs during his Sabbath from Friday sundown through Saturday sundown, in violation of his religious beliefs as a Seventh Day Adventist. Again TSCI moved the plaintiff to another double cell. Unfortunately, the inmate sharing that cell practiced the Asatru faith, which, the plaintiff explained, involves the worship of vikings. That inmate expressed hostility to the plaintiff's Christian calendar, and the plaintiff had to remove his calendar for fear of trouble.

1

reception of Seventh Day Adventist religious services provided by the Three Angels Broadcasting Network, which he had enjoyed at NSP.

Particularly important to the plaintiff, his transfer from the NSP to TSCI caused the plaintiff to lose his single cell. The plaintiff suffers when housed in a double cell because he has a condition known as "shy bladder" which makes using bathroom facilities difficult in close proximity to another person.

Subsequently, however, the plaintiff received a single cell at TSCI. Therefore, some of his claims became moot, and others simply did not state a claim on which relief could be granted under the United States Constitution. The court eventually dismissed Case No. 4:02cv3105 with prejudice.

In the present litigation, the plaintiff reports that DCS subsequently transferred him back to the NSP. In an Affidavit (filing no. 48-2), Michael Kenney, NSP Chief Executive Officer, explains that the plaintiff returned to the NSP at his own request in 2004. Therefore, at NSP, the plaintiff presumably has the advantages of less expensive telephone contact with his family, access to the Three Angels Broadcasting Network, a generally less intimidating inmate population, and a greater selection of possible jobs. However, to his acute distress, the plaintiff has once again lost his single cell, and he reports that the waiting list for single cells at the NSP is long and may result in a delay of many years before he reaches the top of the list.

The guiding legal principle in these circumstances is that double celling is not per se unconstitutional. Rhodes v. Chapman, 452 U.S. 337, 352 (1981). Accord Wilson v. Seiter, 501 U.S. 294, 298 (1991):

> [In Rhodes v. Chapman, 452 U.S. 337 (1981)], inmates at the Southern Ohio Correctional Facility contended that the lodging of two inmates in a single cell ("double celling") constituted cruel and unusual punishment. We rejected that contention, concluding that it amounts "[a]t most ... to a theory that double celling inflicts pain," id., at 348-349 ..., but not that it constitutes the "unnecessary and wanton infliction of pain" that violates the Eighth Amendment, id., at 346 .... The Constitution, we said, "does not mandate comfortable prisons," id., at 349 ..., and only those deprivations denying "the minimal civilized measure of life's necessities," id., at 347 ..., are sufficiently grave to form the basis of an Eighth Amendment violation.

The plaintiff chose to leave TSCI where he had a single cell, and he has rejected

2

the idea of a single cell in segregation. Instead, he wishes to move ahead of other inmates in the general population who precede him on the waiting list for a single cell at NSP. The plaintiff advances the following reasons for such preferential treatment. First, he continues to suffer from a "shy bladder." The condition causes him pain and discomfort, and it is not a recognized ailment for which the NSP medical staff offers treatment. (See also Affidavit of Dr. John Casebolt, filing no. 48-4, confirming that "shy bladder syndrome" is generally not a physiological problem for which there is a medical cure.) Second, the plaintiff has developed hypertension which he attributes, at least in part, to the stress of double celling. Third, the plaintiff believes he never should have been transferred to TSCI in the first place, so that he was unfairly deprived of his previous single cell.[2]

However, the plaintiff has presented no expert medical evidence that his shy bladder or his hypertension requires that he be housed in a single cell for health reasons. Moreover, the plaintiff acknowledges that he receives medication for his hypertension. While Dr. Casebolt has offered mental health counseling for the shy bladder syndrome, the plaintiff as yet has not accepted that treatment (Affidavit of Dr. John Casebolt, filing no. 48-4). As for the original transfer to TSCI, the court explained in Case No. 4:02cv3105 why the transfer did not violate any of the plaintiff's federal constitutional rights.

During the course of this litigation, the plaintiff has attempted to add to his claims. For example, he protests the loss of his job as a legal aide in the law library. He also seeks the return of property confiscated by the defendants. However, the claims related to loss of the legal aide position and the confiscated property are not cognizable in this litigation, as the plaintiff did not exhaust his administrative remedies as to those claims *before* he filed this lawsuit. 42 U.S.C. § 1997e(a). Claims not exhausted *before* filing a lawsuit must be dismissed. <u>Johnson v. Jones</u>, 340 F.3d 624, 627 (8th Cir. 2003). "Thus,

---

[2]The plaintiff voices related complaints, such as the absence of a proper low cholesterol, low fat diet, which affects his hypertension. He also asserts that he suffers sleep deprivation from the lighting outside his NSP cell during the night and from the assignment of cellmates with sleep disorders to his double cell. He also does not appreciate some remarks made by NSP CEO Michael Kenney which the plaintiff construes as harassment. However, those claims alone and even in combination with the others do not reach federal constitutional dimensions.

3

in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred.  If exhaustion was not completed at the time of filing, dismissal is mandatory." Id.

Because the plaintiff has not established an entitlement under the federal Constitution to a single cell or any violation of the Constitution, his claims will be dismissed. However, matters may change as the plaintiff ages, and there is a possibility that one day the plaintiff may be able to show some serious deterioration in his health warranting an alteration in the conditions of his confinement.  In addition, some of the plaintiff's claims were not exhausted until after the commencement of this litigation and may be brought in another lawsuit.  Therefore, the plaintiff's claims will be dismissed without prejudice.

THEREFORE, IT IS ORDERED:

1. That filing no. 45, the plaintiff's Motion for Reconsideration, is denied;

2. That filing no. 46, the defendants' Motion for Summary Judgment, is granted to the extent filing no. 46 is consistent with this Memorandum and Order;

3. That filing no. 58, the plaintiff's Motion for Order for Return of Property Taken by the Defendants, is denied;

4. That filing no. 64, the plaintiff's Motion to Submit New Evidence and Exhibits, is granted; and

5. That judgment will be entered in accordance with this Memorandum and Order.

July 7, 2006.                          BY THE COURT:

                                       s/ *Richard G. Kopf*
                                       United States District Judge